(No. 21970.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LIONEL A. SHERWIN, Plaintiff in Error.

*Opinion filed December 22, 1933.*

DENEEN, HEALY & LEE, (ROY MASSENA, and DONALD N. SCHAFFER, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Lionel A. Sherwin is a practicing attorney in Chicago. On July 15, 1932, Philip J. Finnegan, sitting as a judge of the circuit court of Cook county, adjudged Sherwin guilty of a direct contempt of court and ordered him imprisoned in the county jail of said county for a period of fifteen days. A writ of error was prosecuted in the Appellate Court, where the judgment was affirmed. A writ of error out of this court brings the record here for review.

The pertinent facts as shown by the order of commitment are, that on June 28, 1932, there was pending in the circuit court a proceeding in equity entitled, "Chicago Title and Trust Company, a corporation, as trustee, *v.* Sam Rubin *et al.*" David Plotnick and his wife, Anna Plotnick, were two of the defendants. They had been represented by Isenberg & Isenberg, their attorneys of record. On said day, while the court was in session for the transaction of its judicial business, Sherwin appeared and presented a motion to substitute himself as solicitor for the Plotnicks in lieu of Isenberg & Isenberg. In support of the motion he stated to the court that he had a stipulation for such purpose, and thereupon handed the court a paper purporting to be the stipulation, a copy of which is hereinafter set forth. Michael M. Isenberg, one of the firm of Isenberg & Isenberg, was also present and objected to the proposed substitution on the ground that the Plotnicks had not signed the purported stipulation. Thereupon Sherwin stated to the court that the signatures of the Plotnicks to said instrument were their genuine signatures, but, upon being questioned by the court, stated that their signatures had been affixed by their son-in-law, Lyons. The court found, although not in express terms, that the written instrument presented was not a stipulation and the representation that it was a stipulation was a false statement, made for the purpose of deceiving the court; that Sherwin intended to convey to the court the information that such

paper was duly signed by the Plotnicks and by their solicitors, Isenberg & Isenberg; that the representations made by Sherwin in this particular were false and were known by him to be false; that neither David Plotnick, his wife, Lyons nor Isenberg & Isenberg signed the instrument, and that no proper notice of the application was given to said firm of attorneys by Sherwin, and that his conduct in misrepresenting the facts constituted a direct contempt.

The written instrument which Sherwin presented to the court in support of his motion to be substituted for Isenberg & Isenberg is as follows:

"STATE OF ILLINOIS, } ss.
   COUNTY OF COOK. }

In the Circuit Court of Cook County.

Chicago Title & Trust Co., a corporation,
   as Trustee,
      v.                                    No. B. 224973
Sam Rubin *et al.*

SUBSTITUTION OF SOLICITORS

"We hereby authorize L. A. Sherwin to enter his appearance as solicitor for us in lieu and in place of Isenberg & Isenberg.
                                    DAVID PLOTNICK,
                                    ANNA PLOTNICK.

"We have no objection to the substitution of solicitors for the defendants, David and Anna Plotnick.
                                    CROWE, GORMAN & SAVAGE.

"We hereby withdraw our appearance as solicitors for David Plotnick and Anna Plotnick, defendants in this cause.

_____

"I hereby enter my appearance as solicitor for David Plotnick and Anna Plotnick, certain defendants in this cause.
                                    L. A. SHERWIN."

The order of commitment entered by the court gave Sherwin until September 10, 1932, to file and present a bill of exceptions, and permitted him to furnish a bond in the sum of $1000 by July 18, 1932, for his release. The proceeding was for direct contempt. It was therefore un-

necessary to file a complaint against him or to enter a rule for him to show cause why he should not be adjudged guilty of contempt. However, the court gave him opportunity to offer evidence. In this connection he presented an affidavit of David Plotnick, which recited that he and his wife had retained Sherwin to represent them and to file a substitution of attorneys, if necessary, and that Sherwin's appearance in court and his action in moving to substitute himself for Isenberg & Isenberg was with their authority. Sherwin introduced in evidence a letter from the Plotnicks directing him to appear for them in court in place of said firm of attorneys. The day after the entry of the order committing Sherwin to jail the court entered a further order impounding all of said documents.

When plaintiff in error undertook to prepare the record for review in the Appellate Court he sought to have the impounded documents made a part of the bill of exceptions. Judge Finnegan denied permission to include them. Later, by petition for *mandamus* in the Appellate Court, plaintiff in error sought to compel the chancellor to sign a bill of exceptions which would contain them. The petition was denied on the ground that a judgment entered for direct contempt can be reviewed only on the order adjudging the party to be in contempt and that a bill of exceptions has no proper place in the record. The holding of the Appellate Court in that regard is assigned as error, but the view we take of the case makes it unnecessary for us to pass upon that assignment of error.

When an act constituting a direct contempt is committed in the presence of the judge, under circumstances which give him personal knowledge of the facts, he may punish the offender summarily without entering any rule against him and without hearing any evidence. (*People* v. *Andalman,* 346 Ill. 149; *People* v. *McDonald,* 314 id. 548; *People* v. *Gard,* 259 id. 238.) The order adjudging a contemner guilty must set out the facts constituting the

contempt with sufficient definiteness and certainty to show that the court was authorized to make the order. *People v. Rockola,* 346 Ill. 27; *People v. Hogan,* 256 id. 496.

The gravamen of the offense charged against Sherwin is, (1) that he represented the instrument he presented to the court to be a stipulation signed by the Plotnicks and by Isenberg & Isenberg when it was not so signed, and therefore the representation that the document was a "stipulation" was untrue and was made to deceive the court; and (2) that no proper notice of the application for an order of substitution of solicitors was served upon Isenberg & Isenberg. The objection that the document was not a stipulation is hyercritical. While the agreement was not between the Plotnicks and their former attorneys it was the written authority of the Plotnicks for the substitution of attorneys. They had a right to·change attorneys whenever it suited them to do so unless there was something in the contract of employment to forbid it. No such inhibition appears in this case. The document purported to bear the signatures of the Plotnicks, and it also bore the signature of counsel for complainant, who consented to the substitution. It is impossible for us to understand from the facts recited in the order how the chancellor could have been deceived or misled as to the character of the document which was handed to him, no matter by what name it was called. The paper conspicuously demoninated itself in capital letters, with each word underscored, "SUBSTITUTION OF SOLICITORS." The portion of the document prepared for the purpose of showing the withdrawal of Isenberg & Isenberg as attorneys for the defendants was unsigned, and a casual inspection of the instrument would disclose that fact. We find nothing in the record to justify the contention that plaintiff in error attempted to deceive the court as to the character of the instrument. On the other hand, he displayed his willingness to have the court visualize and determine for itself the force and

effect of the writing upon which the motion for a substitution was based. The finding of the court that Isenberg & Isenberg did not sign the document is of no consequence, for the instrument showed on its face that they had not signed it. No statement was made in court from which it could be inferred that they signed it.

The finding of the court that plaintiff in error said the signatures of the Plotnicks were their genuine signatures, and later, when questioned by the court, stated the signatures had been attached by their son-in-law, Lyons, forms no basis for the ultimate finding and conclusion of the court that neither the Plotnicks nor Lyons signed the instrument. The conclusion is contrary to the declaration that the signatures were affixed by the Plotnicks themselves or by their son-in-law, Lyons. When the statement is fully considered, the most that can be said is that plaintiff in error changed it from a declaration that the Plotnicks had physically affixed their own signatures, to one that their signatures had been attached by their son-in-law. The judgment does not disclose any fact to show that the Plotnicks were imposed upon or that they did not know their signatures were attached, or that their son-in-law had not been expressly authorized to act for them in the employment and substitution of counsel. So far as the disclosed facts are concerned, it seems more reasonable to believe that plaintiff in error acted in good faith than otherwise toward both the Plotnicks and the court.

We are unable to perceive how the judgment for contempt can be supported by a finding that no proper notice of the motion for substitution was served on the firm of Isenberg & Isenberg. The record discloses that one of the firm was present in open court; that he had knowledge of the fact that the motion for substitution would be presented, and that he objected to and resisted the efforts to make a substitution. He could have done no more if he had been served with notice. His presence and participa-

tion in the proceedings waived the necessity of the formal notice, if none was given him.

The judgment does not show any facts upon which an adjudication of direct contempt can be predicated. The order of the Appellate Court and the judgment of the circuit court are accordingly reversed.

*Order of Appellate Court reversed.*
*Judgment of circuit court reversed.*